1

2

3

4

5 **IN THE UNITED STATES DISTRICT COURT**

6 **FOR THE DISTRICT OF ARIZONA**

7

8 Clifford Allen Follansbee,          No. CV 15-8082 GMS DJH (DMF)

9                    Petitioner,      **REPORT AND**
                                      **RECOMMENDATION**
10 v.

11 Charles L. Ryan, et al.,

12                    Respondents.

13

14 TO THE HONORABLE G. MURRAY SNOW, U.S. District Judge:

15          Clifford Follansbee filed a petition for a writ of habeas corpus pursuant to 28

16 U.S.C. § 2254 ("Petition") challenging his convictions in the Coconino County Superior

17 Court on seven (7) counts of sexual assault, seven (7) counts of sexual conduct with a

18 minor, seventeen (17) counts of sexual exploitation of a minor, and one (1) count each of

19 kidnapping and obstructing a criminal investigation. (Doc. 1 at 3-5; Doc. 15, Att. 18

20 [R.T. 02/13/08] at 84-89) As explained below, the Court recommends that Follansbee's

21 Petition be denied and dismissed with prejudice.  The Court further recommends that

22 Follansbee's Motion for Evidentiary Hearing (Doc. 21) be denied as moot.

23                              **I. BACKGROUND**[1]

24          The allegations that led to Follensbee's convictions after a jury trial were that he

25 forced his step-daughter to engage in sexual conduct with him during the night of

26 October 11 and morning of October 12, 2006. (Doc. 15, Att. 4 [R.T. 01/09/08] at 20-22;

27 _____

28          [1] Unless otherwise noted, the following facts are derived from the exhibits
submitted with Respondents' Answer, Doc. 15.

Att. 1 at p. 3, ¶ 2) The charges were based on two separate incidents during that period. (*Id.*) After his convictions in January 2008 and sentencing to 256 years' incarceration in February 2008, Follensbee timely appealed to the Arizona Court of Appeals. (Doc. 15, Att. 17 [R.T. 01/18/08] at 29-42; Att. 1, p. 2 at ¶ 3)

On appeal, Follensbee raised a number of issues, including: (1) his indictments and sentences violated the Double Jeopardy clauses of the U.S. and Arizona Constitutions by charging him both with counts of sexual assault and of sexual conduct with a minor; (2) he was denied his rights to due process and a fair trial when: (a) the prosecution made references to the victim's chastity; (b) the prosecution improperly insinuated that Follansbee had drugged the victim; (c) the jury was subjected to improper influence when the victim's mother cried in court and when the victim whispered to her friends while in the gallery during Follansbee's testimony; and (d) prosecution witnesses gave improper testimony regarding the victim's credibility, descriptions of the sexual assault, and the identification of Follansbee; and (3) the trial court erred regarding aggravating factors used in sentencing Follansbee. (Doc. 15, Att. 19 at 5-55; Att. 1 at 4, 9, 10-11, 13, 15, 17 and 22)

The Arizona Court of Appeals issued a memorandum decision rejecting Follanbee's claims and affirming his convictions and sentences. (*Id.*, Att.1 at 2-24) Follensbee filed a petition for review in the Arizona Supreme Court, which the court denied. (*Id.*, Att. 20 at 23)

Follansbee next initiated a timely notice in Coconino County Superior Court for post-conviction relief ("PCR") pursuant to Rule 32, Arizona Rules of Criminal Procedure. (*Id.* at 25-29) In his notice of PCR, Follansbee answered "yes" to the question "[i]s the defendant raising a claim of ineffective assistance of appellate counsel? (*Id.* at 27) The substantive claims Follansbee described in the notice all involved allegations of court errors leading to prejudice such that the jury could be neither fair nor impartial, violating his rights under the United States and Arizona Constitutions to due process, to equal protection, and to a fair and impartial jury. (*Id.* at 28)

1    Follansbee was appointed counsel for his state post-conviction relief action. (Doc.

2    20, Att. 1 [R.T. 11/21/12] at 9-10) That counsel filed a notice of review and of no

3    colorable claims, after which he was appointed to act as advisory counsel. (*Id.*)

4    Follansbee filed a supplemental petition for PCR on May 31, 2011, which

5    apparently asserted primarily claims and argument directed at ineffective assistance of

6    trial counsel for not raising the trial judge's errors resulting in violations of Follansbee's

7    constitutional rights. (Doc. 15, Att. 20 at 31)

8    At a hearing held on November 21, 2012, before the trial judge, Judge Slayton, it

9    became apparent that Follansbee's arguments regarding the judge's errors included a

10    stand-alone claim of judicial bias against Follansbee by failing to adequately instruct the

11    jury regarding his rulings. (Doc. 20, Att. 2 [R.T. 11/21/12] at 13-17) Follansbee requested

12    an evidentiary hearing during which he would seek testimony from both his appellate

13    counsel and from Judge Slayton. (*Id.*) Follansbee explained that his prior motion for

14    reassignment of his PCR action to another judge was intended to facilitate that testimony.

15    (*Id.*)

16    Judge Slayton advised Follansbee that the claim of judicial bias was not clear

17    within his May 31, 2011, supplemental petition for PCR. (*Id.* at 16-18) Judge Slayton

18    further advised Follansbee to amend his petition to more clearly describe and support his

19    claim of judicial bias, to file with the presiding judge (Judge Moran) a motion to compel

20    Judge Slayton's testimony, and to file a separate motion for reassignment of his case.

21    (*Id.*) Judge Slayton and Follansbee were in agreement that if the motions to compel and

22    for reassignment were denied, that Follansbee's PCR action would "proceed on the basis

23    of what [Follansbee] outlined in [his] supplement to the petition." (*Id.* at 17) Follansbee

24    filed his Amended Supplemental Petition for Post-Conviction Relief in December 2012.

25    (*Id.*, Att. 20 at 31-43)

26    In an order dated January 18, 2013, Presiding Judge Moran denied Follansbee's

27    motion to compel, stating that his review of the trial transcripts attached to the motion

28    and purporting to demonstrate intentional bias by Judge Slayton did not support a

1     colorable claim. (Doc. 21 at 46-47) The order remanded the matter back to Judge Slayton

2     for all further proceedings. (*Id.* at 47)

3         Judge Slayton ruled on Follansbee's PCR petition as follows:

> [t]he Defendant alleged that appellate counsel was ineffective in failing to raise judicial bias against the Defendant. Specifically, appellate counsel should have raised that this Court's viewing of a photograph of his victim somehow led this Court to become so prejudiced against the Defendant that it calculatingly and knowingly sustained and over-ruled certain objections at side-bar conferences in such a way that the jury was led to speculate about the answer/rulings to those objections and, disregarding all other jury instructions, the evidence and testimony, found the Defendant guilty. Judge Moran specifically found that "a review of the attached transcripts to the motion which purport to demonstrate a basis for bias by Judge Slayton does not support a colorable claim of bias by Judge Slayton against the Defendant."

13     (Doc. 15, Att. 20 at 52) Relying on Judge Moran's order that Follansbee had failed to

14     present a colorable claim of judicial bias, Judge Slayton concluded that there could also

15     be no colorable claim for ineffective assistance of appellate counsel for failure to raise the

16     judicial bias claim. (*Id.*) Accordingly, he denied Follansbee's PCR petition. (*Id.*)

17         Follensbee then sought review of this decision in the Arizona Court of Appeals.

18     (Doc. 20, Att. 2 at 44-51 and Att. 3 at 1-11) The Arizona Court of Appeals granted

19     review and denied the petition in an unpublished opinion. (Doc. 15, Att. 20 at 54-55)

20     Applying the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984),

21     the court of appeals determined that Follansbee had failed to offer evidence that his

22     appellate counsel's representation "fell below professional norms" or that the result of his

23     appeal would have changed if he had raised the issue of judicial bias. (*Id.*)

24         Follensbee then petitioned for review by the Arizona Supreme Court. (Doc. 20,

25     Att. 3 at 15-27) The court summarily denied his petition. (Doc. 15, Att. 20 at 57)

26     Follensbee filed his Petition for Writ of Habeas Corpus with this Court on May 13, 2015.

27     (Doc. 1)

## II. LEGAL FRAMEWORK

**A. Exhaustion of Remedies & Procedural Default**

<u>Exhaustion of Remedies</u>.  A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66.

<u>Procedural Default</u>.  A claim can also be subject to an express or implied procedural bar.  *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010).  An express procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Robinson*, 595 F.3d at 1100.

An implied procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Poland v. Stewart*, 169 F.3d 573, 586 (9th Cir. 1999); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

This Court can review a procedurally defaulted claim if the petitioner can demonstrate either cause for the default and actual prejudice to excuse the default, or a miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S.

at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *States v. Frady*, 456 U.S. 152, 167-68 (1982).

### B. Ineffective Assistance of Counsel

Under clearly established Federal law on ineffective assistance of counsel ("IAC"), a petitioner must show that his trial counsel's performance was both (a) objectively deficient and (b) caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). The Court has discretion to determine which *Strickland* prong to apply first. *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998). A habeas court reviewing a claim of ineffective assistance of counsel must determine "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal citations and quotations omitted).

### C. 28 U.S.C. § 2254 Habeas Petition – Legal Standard of Review

On habeas review, this Court can only grant relief if the petitioner demonstrates prejudice because the adjudication of a claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "'highly deferential standard for evaluating state court rulings' which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

### III. FOLLENSBEE'S HABEAS CLAIMS

Follensbee's federal habeas petition raises the following grounds for relief:

(Ground 1) The trial judge failed to disclose to the jury his decisions after several bench conferences, thereby demonstrating judicial bias and violating Follansbee's right to

due process and a fair trial pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution (Doc. 1 at 11-16);

(Ground 2) The State committed prosecutorial misconduct when it deliberately misled the trial court and the defense about evidence it intended to introduce regarding the victim's chastity, in violation of Follansbee's rights to due process and a fair trial under the Fifth and Fourteenth Amendments of the U.S. Constitution (*Id.* at 17-19);

(Ground 3) The jury heard opinion testimony of the State's expert witness which had the effect of bolstering the victim's credibility, thus violating Follansbee's rights to due process and a fair trial under the Fifth and Fourteenth Amendments of the U.S. Constitution (*Id.* at 20-22);

(Ground 4) The State committed prosecutorial misconduct when it improperly insinuated that Follansbee had drugged his victim for the purpose of incapacitation, in violation of Follansbee's rights to due process and a fair trial under the Fifth and Fourteenth Amendments of the U.S. Constitution (*Id.* at 23-24);

(Ground 5) Certain actions of the victim and her friends, and of the victim's mother while in the gallery improperly influenced the jury in violation of Follansbee's rights to due process and a fair trial under the Fifth and Fourteenth Amendments of the U.S. Constitution (*Id.* at 25-26); and

(Ground 6) The State improperly and repeatedly charged two counts for the same offense, violating Follansbee's protection against double jeopardy and rights to due process pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution (*Id.* at 27-29).

**A. Follanbee's Unexhausted/Defaulted Claims**

As is discussed in greater detail with respect to each ground below, Follansbee did not exhaust on direct appeal to the Arizona Court of Appeals the issues underlying Grounds 2, 3 and 5. Because Follansbee cannot now return to the state courts, these claims are subject to a procedural bar. This Court, however, can review a procedurally defaulted claim if the petitioner can demonstrate either cause for the default and actual prejudice to excuse the default, or a miscarriage of justice. *Schlup v. Delo*, 513 U.S. at

321; *Murray v. Carrier*, 477 U.S. at 495-96; *States v. Frady*, 456 U.S. at 167-68.

Follansbee does not argue cause for his failure to exhaust a federal claim on these grounds. (Doc. 20 at 39-40) Instead, he specifically relies on "the merits of his appellate brief" to demonstrate exhaustion. (*Id.*) Even if Follansbee had demonstrated cause for exhaustion, the record fails to demonstrate prejudice such that a constitutional error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Neither has Follansbee established for Grounds 2, 3 or 5 that "a constitutional error has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Accordingly, this Court cannot review further Grounds 2, 3 and 5 of Follansbee's petition.

(i)     *Ground 2 – Prosecutorial Misconduct Regarding Victim's Chastity*

Follansbee asserts that the State committed prosecutorial misconduct by failing to disclose, without an offer of proof, its intention to introduce evidence bearing on the victim's chastity. (Doc. 1 at 17) In a pre-trial minute entry, Judge Slayton ordered that no questions could be asked regarding the victim's chastity or whether she was a virgin at the time of the alleged assaults without a sidebar conference to ask for an offer of proof. (Doc. 20, Att. 5 [R.T. 01/09/08] at 24) Despite this order, the prosecutor said in his opening statement that Follansbee had "taken [the victim's] virginity in a vicious rape." (Doc. 15, Att. 4 [R.T. 01/09/08] at 44) The next day, Follansbee's counsel moved for a mistrial "pursuant to the due process clause of the State Constitution." (Doc. 15, Att. 6 [R.T. 01/10/08] at 13) Judge Slayton denied that motion, gave the jury a curative instruction, and ordered again that the victim's virginity not be put in issue without a request and an offer of proof. (*Id.* at 13-18)

Later during the trial, the prosecutor asked a witness who had conducted a genital exam on the victim after the assault, whether the hymen is "always injured or changed as a result of the first sexual encounter?" (*Id.*, Att. 11 [R.T. 01/15/08] at 31) Follansbee's counsel objected and reasserted his motion for a mistrial on the basis that the questioning about a first sexual encounter violated the court's order. (*Id.* at 32-33) Judge Slayton sustained Follansbee's objection at sidebar, but denied the motion for mistrial. (*Id.*) The

judge explained that the prosecutor's questioning was less prejudicial because it addressed the issue generally, rather than specific to the victim. (*Id.*)

Follansbee raised this issue on direct appeal and argued that the State's prosecution of its case violated his rights to due process and to a fair trial under the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article 2 §§4 and 24 of the Arizona Constitution. (Doc. 15, Att. 19 at 31-33) He also cited the U.S. Supreme Court in *Lisenba v. California*, 314 U.S. 219, 236 (1941), for the test of a denial of due process and resulting constitutionally unfair criminal trial: that due process is denied when errors resulted in fundamental unfairness that "fatally infected the trial."  (*Id.*)

Follansbee's citations to the U.S. and Arizona Constitutions and to *Lisenba* were made in an introductory paragraph that applied to subsequent discussion and arguments under each of the following four claims: prosecutorial misconduct regarding the victim's chastity, improper insinuation that Follansbee had drugged the victim, improper influence of the jury by the victim and her mother, and improper testimony regarding the victim's credibility. (*Id.* at 31-47) Follansbee asserts each of these four claims as grounds in his habeas petition here. (Doc. 1 at 17-26 (Grounds Two through Five))

Follansbee is required to have exhausted his claim of prosecutorial misconduct regarding evidence of the victim's chastity in state court. 28 U.S.C. § 2254(b)-(c). That means he must have fairly presented this argument as a *federal* claim to the state court. *See Scott v. Schriro,* 567 F.3d 573, 582 (9th Cir. 2009). Isolated citations to federal provisions or cases do not create a federal claim; instead, Follansbee must have articulated a federal theory for his federal habeas claim. *See Castillo v. McFadden,* 399 F.3d 993, 1002 (9th Cir. 2005). Further, mere "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial," do not establish exhaustion. *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999) (citation omitted). Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim. *Castillo,* 399 F.3d at 999.

Within his appellate brief, Follansbee asserted that after the prosecutor's opening

statement, Follansbee moved for mistrial based on a violation of A.R.S. § 13-1421[2] as well as a denial of his right to a fair trial. (Doc. 15, Att. 19 at 32) As noted, on the issue of evidence regarding the victim's chastity, Follansbee's trial counsel argued a violation of his right to due process under the Arizona Constitution, and did not mention the U.S. Constitution. (*Id.*, Att. 6 [R.T. 01/10/08] at 13) The appellate brief further asserts that Follansbee's subsequent objection to the prosecution's question regarding a first sexual encounter represented violations of the court's order, of A.R.S. 13-1421, and of his agreement with defense counsel. (*Id.*, Att. 19 at 32)

Follansbee's argument in his appellate brief specific to prosecutorial misconduct regarding the victim's chastity is supported by just two cases. (*Id.*) Each case is a state court decision that addresses the defense of harmless error. (*Id.*) The Arizona Court of Appeals analyzed and ruled on Follansbee's claim solely on the basis of Arizona law. (*Id.*, Att. 1 at 9-10) Despite his introductory citation to the U.S. Constitution, the arguments Follansbee presented to the Arizona Court of Appeals on direct appeal did not fairly present or articulate a claim based upon federal constitutional law or statutes. His claim was not exhausted as intended by §2254(b)-(c). *See Scott v. Schriro,* 567 F.3d 573, 582 (9th Cir. 2009); *Castillo v. McFadden,* 399 F.3d 993, 1002 (9th Cir. 2005); *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999).

(ii)    *Ground 3 - Improper Testimony Regarding Victim's Credibility*

Follansbee argues that the trial court erred when it allowed the testimony of the State's expert witness Diane Holt. (Doc. 1 at 20) Ms. Holt was permitted to testify that the victim had told her that she had been sexually assaulted by Follansbee. (Doc. 15, Att. 11 [R.T. 01/15/08] at 20-21) He complains this testimony was improper, was not relevant to the diagnosis and medical treatment purposes of Ms. Holt's examination, and had the improper effect of bolstering the victim's credibility. (Doc. 1 at 20) Ms. Holt had

---

[2] This section of the Arizona Criminal Code is entitled "Evidence relating to victim's chastity; pretrial hearing," and requires, in part: "[e]vidence of  specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence . . ." A.R.S. 13-1421(A)

conducted a genital examination as a part of the victim's medical evaluation performed at a clinic that took referrals for children with "suspected abuse or neglect concerns." (Doc. 15, Att. 11 [R.T. 01/15/08] at 15)

Before this testimony was elicited at trial, defense counsel objected, noting that he had already made a record of the reasons underlying the objection. (*Id.* at 21) In the course of assessing juror questions for Ms. Holt, defense counsel reasserted his opposition to Ms. Holt's testimony about the victim's having identified Follansbee as her assailant, and again moved for a mistrial. (*Id.* at 54-56) Defense counsel complained that this testimony deprived Follansbee of a fair and impartial jury as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and by Article 2, Section 4 of the Arizona Constitution. (*Id.* at 55)

As is discussed *supra* under Ground 2, Follansbee raised this issue on direct appeal and, in a general introduction, asserted a violation of his rights to due process and to a fair trial under the both the U.S. and Arizona Constitutions, also citing *Lisenba v. California*, 314 U.S. 219, 236 (1941) for the test applicable to a claim of a constitutionally unfair trial. (Doc. 15, Att. 19 at 31-33)

However, Follansbee's lengthy argument to the Arizona Court of Appeals was supported by Arizona state court caselaw alone. (*Id.*, Att. 19 at 38-47) The argument was based on an issue turning on the Arizona Rules of Evidence, and neglected to fairly present or articulate an issue grounded in federal constitutional or statutory law. Follansbee has not exhausted his federal claim set forth in Ground 3. *See Scott v. Schriro,* 567 F.3d 573, 582 (9th Cir. 2009); *Castillo v. McFadden,* 399 F.3d 993, 1002 (9th Cir. 2005); *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999).

(iii)   *Ground 5 – Due Process Violation Related to Victim's and Victim's Mother's Behavior in the Courtroom*

Follansbee argues that his due process and fair trial rights were fundamentally compromised when: (1) the victim's mother became emotional and left the courtroom during opening statements; and (2) three jurors observed and heard snippets of the victim's conversation while sitting in the gallery with two friends during Follansbee's

testimony in the defense case. (Doc. 1 at 25-26) In each instance, the court took corrective action. (Doc. 15, Att. 6 [R.T. 01/10/08] at 7-10; Att. 13 [R.T. 01/16/08] at 49-61) Although defense counsel was not aware of the victim conversing with her friends during Mr. Follansbee's testimony, he moved for a mistrial after the trial judge conducted voir dire with the three affected jurors. (*Id.*, Att. 13 [R.T. 01/16/08] at 57-59)

When defense counsel orally moved for a mistrial, he based his motion for a fair and impartial jury on the Sixth Amendment to the U.S. Constitution and Article 2, Section 24 of the Arizona Constitution, and for due process on the Fifth and Fourteenth Amendments to the U.S. Constitution and Article 2, Section 4 of the Arizona Constitution. (*Id.*, Att. 13 at 59) Again, as is discussed *supra* under Ground 2, Follansbee raised this issue on direct appeal and, in a general introduction, asserted a violation of his rights to due process and to a fair trial under the both the U.S. and Arizona Constitutions, also citing *Lisenba v. California*, 314 U.S. 219, 236 (1941). (Doc. 15, Att. 19 at 31-33) Follansbee's argument on appeal cited exclusively state caselaw and statute.  Under these circumstances, Follansbee has failed to fairly present or articulate an issue grounded in federal constitutional or statutory law.  Follansbee has not exhausted his federal claim set forth in Ground 5. *See Scott v. Schriro,* 567 F.3d 573, 582 (9th Cir. 2009); *Castillo v. McFadden,* 399 F.3d 993, 1002 (9th Cir. 2005); *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999).

**B. Follansbee's Exhausted Claims**

(i)     *Ground 1 - Judicial Bias*

Follansbee argues that his rights to due process and a fair trial guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution were violated by the trial judge when he sustained six defense objections on evidentiary grounds during bench conferences, but then did not announce his ruling to the jury before continuing with witness examination. (Doc. 1 at 11-16) Follansbee argues in part that this indicated judicial bias because in three other contemporaneous instances in which the State objected, after a bench conference the judge announced to the jury that the objection had been sustained. (*Id.*)

In the preliminary jury instructions, the jury was instructed that "[i]f an objection to a question is sustained, you must disregard the question, and you must not guess what the answer to that question might have been." (Doc. 15, Att. 4 [R.T. 01/09/08] at 27) Substantially the same instruction was given in the final jury instructions: "[i]f the Court sustained an objection to a lawyer's question, you must disregard it and any answer given." (*Id.*, Att. 15 [R.T. 01/17/08] at 45) Notwithstanding the fact that the judge had sustained defense objections, and gave preliminary and final instructions regarding objections, Follansbee urges that the failure of the judge to announce his rulings to the jury or to provide a specific curative instruction in these six instances misled the jury and created fundamental error. (Doc. 1 at 16)

As Follansbee explains within his petition, this claim of judicial bias was included as the basis for an ineffective assistance of appellate counsel claim in his PCR petition to the trial court. (Doc. 1 at 16; Doc. 15, Att. 20 at 31-43) After the trial court permitted him to amend his supplemental PCR petition, Follansbee asserted both a stand-alone claim of judicial bias and an ineffective assistance of appellate counsel claim for counsel's failure to raise this same judicial bias claim on direct appeal. (*Id.*)  The trial judge denied relief, relying in part on Judge Moran's finding of no colorable claim of judicial bias, and in turn found no basis for a claim of ineffective assistance of appellate counsel for failure to raise the judicial bias issue. (Doc. 15, Att. 20 at 52)

Here, Respondents urge that Follansbee's claim of judicial bias in Ground 1 was not raised in either his direct appeal or in his PCR action, and is unexhausted. (Doc. 15 at 8) The record supports the assertion that a stand-alone claim was not raised on direct appeal, and was thus subject to waiver under Arizona Rule of Criminal Procedure 32.2(a)(3). When the judicial bias issue was raised in Follansbee's amended supplemental PCR petition as both a stand-alone claim and as the subject of an ineffective assistance of appellate counsel (IAAC) claim, the PCR court ruled summarily that the claim of bias "undergirding" Follansbee's IAAC claim had been found not colorable, and found no colorable claim of IAAC for failure to raise that same judicial bias claim. (*Id.*, Att. 20 at 52) In its denial of Follansbee's petition for relief, the Arizona Court of Appeals' analysis

addressed the IAAC claim but not the judicial bias claim. (*Id.* at 54-55) The Arizona Supreme Court denied Follansbee's petition for relief without comment. (*Id.* at 57)

Arizona Rule of Criminal Procedure 32.2(a)(3) provides that a claim that could have been raised on direct appeal, but was not, is waived and precluded from consideration in a Rule 32 PCR proceeding absent a showing of cause and prejudice or of a fundamental miscarriage of justice. *See Poland v. Stewart*, 169 F.3d 573, 578 (9th Cir. 1998). The fact that a federal habeas petitioner did not comply with a state procedural rule does not alone prevent review of his claim: "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed,* 489 U.S. 255, 261-62 (1989).  In *Harris*, the Court declared that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Id.* at 263 (citations and internal quotation marks omitted).

The trial court's January 22, 2013 order denying relief on Follansbee's Amended Supplemental Petition for Post-Conviction Relief (Doc. 15, Att. 20 at 52) is ambiguous regarding whether it is addressing Follansbee's claim of judicial bias as a stand-alone claim or rather merely as the basis for his claim of ineffective assistance of appellate counsel for not raising the judicial bias claim on direct appeal. Judge Slayton captioned his single-page summary ruling as "Ruling Re: Petition for Post-Conviction Relief Re: Ineffectiveness of Appellate Counsel," but also stated "[a]s this 'claim of bias' undergirding Defendant's claim of ineffective assistance of counsel was specifically not found by Judge Moran, this Court finds no colorable claim of ineffectiveness of appellate counsel for failing to raise such a claim." (*Id.*, emphasis in original omitted)

The Arizona Court of Appeals provided a more detailed discussion to support its denial of relief, but addressed only Follansbee's IAAC claim, even though Follansbee's petition for review plainly advanced the judicial bias claim as a stand-alone issue. (*Id.*, Att. 20 at 55) The Court concluded its memorandum decision by stating, "[w]hile the petition for review presents additional issues, Follansbee did not raise those issues in the

petition for post-conviction relief filed below." As noted, however, Follansbee in fact did raise the judicial bias claim in his amended supplemental petition for PCR. (*Id.*)

One possible explanation for the absence of explicit rulings on Follansbee's stand-alone judicial bias issue by the trial and appellate courts is that this issue was subject to waiver under Rule 32.2(a)(3) for not having been raised on direct appeal. This potential ground for denial would have been obvious, as Follansbee's ineffective assistance of appellate counsel claim raised in his Rule 32 action was based on the fact that appellate counsel did not assert the judicial bias claim on direct appeal. However, neither court's order even suggested that Follansbee's stand-alone judicial bias claim had been subject to a procedural bar. The last court rendering a reasoned judgment on Follansbee's PCR petition was the Arizona Court of Appeals. Therefore, under the rule announced in *Harris v. Reed,* 489 U.S. 255, 261-62 (1989), this Court is not barred from habeas review of the merits of Follansbee's stand-alone judicial bias claim.

Although the Arizona Court of Appeals did not rule separately on Follansbee's stand-alone judicial bias claim, that court expressly applied the *Strickland v. Washington* two-part test to determine whether Follansbee had asserted a colorable IAAC claim. (Doc. 15, Att. 20 at 54-55)  *Strickland*'s two-part test requires the claimant to "establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002) citing *Strickland,* 466 U.S. at 688, 694. A proper determination of *Strickland*'s standard of reasonableness prong requires the court to examine the merits of the claim not raised. (*Id.*) In fact, the Arizona Court of Appeals concluded that Follansbee had not offered evidence sufficient to show that his appellate counsel's decision not to appeal the judicial bias issue either fell below prevailing professional norms or that the trial outcome would have differed if his appellate counsel had raised that issue. (Doc. 15, Att. 20 at 55)

Supreme Court caselaw clearly recognizes a criminal defendant's right to a fair and impartial jury as guaranteed by the Due Process Clause. *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). To

succeed on his claim of judicial bias, Follansbee must overcome the presumption that the trial judge acted with "honesty and integrity." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "In the absence of any evidence of some extrajudicial source of bias or partiality," a judge's adverse rulings are generally insufficient to overcome the presumption of judicial integrity. *Liteky v. United States,* 510 U.S. 540, 555 (1994). On federal habeas review, the Court "must ask whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez,* 67 F.3d 734, 740 (9th Cir.1995). "To sustain a claim of this kind, there must be an 'extremely high level of interference' by the trial judge which creates 'a pervasive climate of partiality and unfairness.'" *Id.* (quoting *United States v. DeLuca,* 692 F.2d 1277, 1282 (9th Cir.1982)).

In Ground 1, Follansbee contends that Judge Slayton impermissibly favored the State when he announced his rulings sustaining the prosecutor's objections after three bench conferences, but failed to announce his rulings after six bench conferences on defense objections. (Doc. 1 at 11-16) In his reply to Respondents' Answer, Follansbee argues that the judge's failure to announce his rulings on the defense objections led the jury to speculate about what the sidebar rulings actually were, which Follansbee concludes represented an abuse of the judge's discretion, and also improperly influenced the jurors to the extent that the fairness of the trial was compromised. (Doc. 20 at 31-34) A thorough review of the trial transcripts, however, demonstrates no basis for a finding of fundamental unfairness.

In four of the six defense objections followed by a sidebar, either defense counsel: (1) did not make an objection and merely asked to be heard at sidebar; or (2) stated only that he objected and asked to approach without explaining any ground for or details about the objection. (Doc. 15, Att. 6 [R.T. 01/10/08] at 29-31; Att. 8 [R.T. 01/11/08] at 105; Att. 11 [R.T. 01/15/08] at 27; Att. 13 [R.T. 01/16/08] at 81)   Accordingly, because defense counsel did not provide any details for his objection, there was simply no obvious issue on which the jury might speculate.

Regarding the two remaining defense objections, defense counsel asserted a

ground for the objection before the bench conference. (*Id.*, Att. 6 [R.T. 01/10/08] at 33-37; Att. 11 [R.T. 01/15/08] at 31-33)  The first of these two sidebars merely involved an objection asserting the need for the prosecutor to lay additional foundation before asking a question. (*Id.*, Att. 6 [R.T. 01/10/08] at 33-37). The second objection was to the use of the phrase "first sexual encounter." (*Id.*, Att. 11 [R.T. 01/15/08] at 31) After the second sidebar, subsequent questioning by the prosecutor would have allowed the jury to infer that the defense objection had been sustained**.**

The first State objection occurred when defense counsel moved to admit Follansbee's military discharge papers. (*Id.*, Att. 12 [R.T. 01/16/08] at 100-101) Because the objection was sustained, the jury knew only that the papers would not be admitted. (*Id.*, Att. 12 [R.T.01/16/08] at 102) The second State objection was made during the sidebar, thus providing no realistic basis for jury speculation. (*Id.*, Att. 13 [R.T. 01/16/08] at 31) The third State objection was made when Follansbee testified that an argument he had with the victim involved something the victim did that was "illegal." After the judge called counsel to sidebar and the sidebar ended, the judge instructed the jury, "[t]he last answer that Mr. Follansbee gave and he believed that [the victim] did something illegal is stricken from the record and the jury is ordered to disregard it." (*Id.*)

The thrust of Follansbee's complaints about Judge Slayton's treatment of the specific defense and State objections set forth in Ground 1 is directed to how the objections were handled by the judge rather than how he ruled on them. There is no substantive difference in how the judge handled the defense and State's objections on which Follansbee bases his argument.  Importantly, "[t]he trial judge has wide latitude in the admission of evidence." *Kanekoa v. City and County of Honolulu*, 879 F.2d 607, 613 (9th Cir. 1989). In fact, the judge's handling of defense objections at sidebar, including his decision not to announce to the jury how he ruled on these defense objections, is more reasonably viewed as judicial impartiality and fairness.

Viewed as a whole, the trial record also fails to support a claim of judicial bias. For instance, the defense made over a hundred objections during the trial, and greater than half of those were sustained. (*Id.*, Atts. 3-16 [R.T. 01/09/08 – 01/17/08]) The judge

*sua sponte* cautioned the prosecutor on his questioning on at least two occasions. (*Id.*, Att. 4 [R.T. 01/09/08] at 66; Att. 7 [R.T. 01/10/08] at 97-98) Although the State made very few evidentiary objections during the defense case, in at least one instance the State asked to approach the bench, counsel argued an evidentiary issue, and the judge made no announcement regarding the resolution of that issue once the sidebar ended. (*Id.*, Att. 16 [R.T. 01/17/08] at 12-14)

The preliminary and final jury instructions are pertinent to Follansbee's claim of bias. The preliminary instructions included that it is the jury's "duty to decide the facts," that the jury "must decide the facts only from the evidence produced in Court," that the jury "must not speculate or guess about any fact," that the jury "must determine the facts only from the testimony of witnesses and from exhibits admitted in evidence[,]" and that "questions by a witness or to a witness" are not evidence. (Doc. 15, Att. 4 [R.T. 01/09/08] at 24, 26)

Further, the preliminary instructions included that "[i]f a lawyer objects to a question and I do not allow the witness to answer, you must not try to guess what the answer might have been. You must also not try to guess the reason the lawyer objected in the first place." (*Id.* at 27) Significantly, preliminary instructions also included the admonition to "not concern yourself with the reasons for my rulings on the admission of evidence. Do not regard those rulings as any indication from me of the credibility of the witnesses or the weight that you should give to any evidence that has been admitted." (*Id.* at 28)

The final jury instructions included that the jury must "[d]etermine the facts only from the evidence produced in Court[,]" should "not guess about any fact[,]" and must "not be concerned with any opinion that you feel I have about the facts." (Doc. 15, Att. 15 [R.T. 01/17/08] at 44)

Follansbee's argument that he was prejudiced by the judge's not announcing to the jury what his ruling on an objection was, or how a bench conference issue was resolved, in the few instances he specifies in Ground 1 ignores the jury instructions considered as a whole. The jury instructions expressly and appropriately addressed any concerns about

jury speculation regarding questions asked but not answered, the reasons why counsel may have objected to a question or testimony, the judge's reasons for ruling on objections regarding either witness credibility or the weight accorded evidence admitted, and jurors guessing about facts. Courts presume that juries follow instructions that are given. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000).

Based on this Court's thorough review of the trial transcripts, the Court concludes that Follansbee has failed to overcome the presumption that the trial judge acted with honesty and integrity. The trial judge's conduct regarding the rulings on objections of which Follansbee complains was neither partial nor unfair and did not violate federal due process. Any concerns regarding potential jury speculation about rulings on defense objections were clearly and adequately addressed within the jury instructions.

Follansbee has failed to show, and the record does not support, that the Arizona Court of Appeal's decision affirming Follansbee's convictions and sentences were contrary to clearly established federal law, or were based on an unreasonable determination of the facts.

(ii) *Ground 4 – Prosecution Improperly Insinuated that Follansbee Drugged the Victim*

In Ground 4 of his habeas petition, Follansbee asserts that the prosecutor engaged in misconduct by improperly insinuating at trial that Follansbee had drugged a beverage consumed by the victim, intending to incapacitate her to facilitate his sexual assault on her. (Doc. 1 at 23)

The basis for Follansbee's argument included:

(1) The prosecutor's discussion in his opening statement of defendant providing to the victim and her friend, E.G., pink wine coolers in glasses on the night of the assaults. The prosecutor stated this was something Follansbee had never done before and left the girls feeling uncharacteristically extremely tired after drinking an additional bottle of wine cooler apiece. (Doc.15, Att. 4 [R.T. 01/09/08] at 45-48)

(2) The victim's testimony that Follansbee brought the two girls each a glass of pink margherita cooler and allowed them to each consume most of another bottle of

margherita cooler, which rapidly left the victim feeling "very tired" and "really groggy," rather than drunk or "buzzed." (*Id.*, Att. 6 [R.T. 01/10/08] at 64-69)

(3) The victim's further testimony that when Follansbee woke her up during the night and made her come into his bedroom she felt groggy and "couldn't walk or anything." (*Id.* at 73)

(4) The victim's testimony that after she was assaulted and returned to her bedroom, she was still tired and groggy and "could not focus or see hardly." (*Id.* at 78)

(5) E.G.'s testimony that on the evening in question, Follansbee brought her and the victim a pink wine cooler each, in glasses, and told them they could have the other two bottles of cooler in the refrigerator downstairs, which they also consumed, after which E.G. felt really tired as opposed to drunk. (Doc. 15, Att. 4 [R.T. 01/09/08] at 80, Att. 5 [R.T. 01/09/08] at 1, 5, 7-8)

(6) The prosecutor's discussion in closing argument that the girls testified they did not feel drunk after consuming the wine coolers, and instead felt "really weird, different, fast, really groggy, sleepy."  (*Id.*, Att. 15 [R.T. 01/17/08] at 62)

Follansbee's trial counsel did not object to the victim's or E.G.'s testimony regarding the drinks and how they felt after consuming the drinks, or to the prosecutor's related statements and argument.

In his direct appeal to the Arizona Court of Appeals, Follensbee argued that the State's questioning at trial and argument related to the girls' testimony about how they felt after drinking the coolers was improper because "the State possessed absolutely no evidence to support its insinuation that [Follansbee] had drugged either minor by placing something in the single wine cooler he personally served them, on ice." (*Id.*, Att. 19 at 34-35) Follansbee expressly relied on federal caselaw to support his argument that "the government may not 'suggest that information not in evidence supports its case,'" and that "such suggestion violates due process where it gives the jury a 'false impression.'" (*Id.*)  Follansbee's reliance on federal caselaw to support his argument indicates that his claim was sufficiently grounded in federal constitutional law.  His claim was therefore exhausted for the purposes of §2254(b).

1   Ruling on Follansbee's arguments, the Arizona Court of Appeals first established

2   that, because Follansbee failed to object at trial, it would review the arguments only for

3   fundamental error. (*Id.*, Att. 1 at 10-11) The test applied by the court was that the error

4   must have been such that Follansbee "could not possibly have received a fair trial." (*Id.*,

5   citing *State v. Henderson*, 210 Ariz. 561, 567, 115 P.3d 601, 607 (Ariz. 2005)). The court

6   held that the girls' testimony regarding the drinks and the drinks' effect on them was

7   properly admitted relevant evidence and that the prosecutor's comments in closing

8   argument urging the jury members to draw their own inferences were proper. (*Id.* at 12)

9   Noting that the "lack of certainty as to whether the drinks were actually drugged goes

10  only to the weight of the evidence, not its admissibility[,]" the court concluded that the

11  trial court did not err by failing, *sua sponte*, to preclude admission of this evidence or to

12  preclude the use of the evidence by the State in closing argument. (*Id.*)

13      On allegations of prosecutorial misconduct in violation of a defendant's federal

14  due process rights, a court will consider "whether the prosecutor's actions 'so infected the

15  trial with unfairness as to make the resulting conviction a denial of due process.'" *Hein v.*

16  *Sullivan*, 601 F.3d 897, 912 (9th Cir. 2010), quoting *Darden v. Wainwright*, 477 U.S. 168,

17  181 (1986) (additional citation and internal quotation marks omitted).

18      The trial record shows that the prosecutor asked the girls open-ended questions

19  about what happened and how the drinks made them feel. (Doc. 15, Att. 6 [R.T.

20  01/10/08] at 64-69, 73, 78; Att. 4 [R.T. 01/09/08] at 80, Att. 5 [R.T. 01/09/08] at 1, 5, 7-

21  8) He did not elicit any testimony about why the girls felt more tired and groggy, rather

22  than drunk. (*Id.*) The prosecutor's closing argument did not urge the jury to connect the

23  fact that Follansbee provided the girls with the first pink coolers and their subsequent

24  feelings of tiredness or grogginess. (*Id.*, Att. 15 [R.T. 01/17/08] at 61-63; Att. 16 [R.T.

25  01/17/08] at 55) If there were an inference to be drawn, the State left it to the jury to

    make.

26      Applying the deferential standard to the Arizona Court of Appeals' finding of no

27  prejudicial, fundamental error, the Court concludes that Follansbee has failed to

28  demonstrate that state court review was contrary to, or involved the unreasonable

application of, relevant federal law; or that such review was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

> (iii)    *Ground 6 – Double Jeopardy*

In his petition, Follansbee complains that the State improperly charged multiple counts for a single offense, causing him to be subject to double jeopardy in violation of his due process rights as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution. (Doc. 1 at 27) Specifically, he argues that he should not have been charged and convicted on counts of both sexual assault pursuant to A.R.S. § 13-1406(A) and sexual conduct with a minor pursuant to A.R.S. §13-1405(A), because the counts "pertained to the identical single act." (*Id.*)

The Arizona Court of Appeals assessed Follansbee's identical argument on direct appeal by applying the U.S. Supreme Court case *Blockburger v. United States*, 284 U.S. 299 (1932). Under *Blockburger*, the Arizona court stated, "[w]hen an act or omission violates two statutory sections, we determine 'whether each provision requires proof of a fact which the other does not.'" (Doc. 15, Att. 1 at ¶ 8 (quoting *Blockburger*, 284 U.S. at 304)). Put another way, "even when the same conduct forms the basis for two charges, the two charges do not necessarily entail the 'same offense' for double jeopardy purposes". *United States v. Arlt*, 252 F.3d 1032, 1039 (9th Cir. 2001) (citing *United States v. Dixon*, 509 U.S. 688, 703-04 (1993)) "What is determinative under the Court's double jeopardy doctrine is simply whether the statutes involved require satisfaction of the same statutory elements, or whether each statute requires proof of an element that the other does not." *Id.*

The Arizona Court of Appeals reasoned:

> A conviction for sexual assault requires proof that the defendant (1) knowingly or intentionally engaged in sexual intercourse or oral sexual conduct (2) without consent of the other person. A.R.S. § 13-1406(A) (2001). By contrast, a conviction for sexual conduct with a minor requires proof that the defendant (1) knowingly or intentionally engaged in sexual intercourse or oral sexual conduct (2) with a person under the age of eighteen. A.R.S. § 13-1405(A) (2001).

Each of these statutes contains an element that the other does not. Lack of consent is not an element of sexual conduct with a minor, and the age of the victim is not an element of sexual assault, thus the two crimes constitute separate offenses under the *Blockburger* test.

(Doc. 15, Att. 1, p. 6 at ¶¶ 9-10)

Follansbee offers no legal argument on why the Arizona Court of Appeals' judgment affirming his convictions and sentencing was contrary to or involved an unreasonable application of established federal law or that it involved a decision based on an unreasonable determination of the facts adduced in his trial.

**IT IS THEREFORE RECOMMENDED** that Clifford Allen Follansbee's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

**IT IS FURTHER RECOMMENDED** that Follansbee's Motion for Evidentiary Hearing (Doc. 21) be **denied as moot**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule

. . . .

. . . .

72, Federal Rules of Civil Procedure.

   Dated this 26th day of August, 2016.

Honorable Deborah M. Fine
United States Magistrate Judge