WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Clifford Allen Follansbee,

              Petitioner,

v.

Charles L. Ryan, et al.,

              Respondents.

No. CV-15-08082-PCT-GMS

**ORDER**

Pending before the Court are Petitioner Clifford Allen Follansbee's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"), (Doc. 1), and Motion for Evidentiary Hearing, (Doc. 21); and United States Magistrate Judge Deborah M. Fine's Report and Recommendation ("R & R"), (Doc. 22). The R & R recommends that the Court deny and dismiss the Petition with prejudice, and deny the Motion for Evidentiary Hearing as moot. (Doc. 22 at 23.) Petitioner filed a timely objection ("Objection") to the R & R. (Doc. 25.) Thus, the Court will make a de novo determination of those portions of the R & R to which an objection is made. 28 U.S.C. § 636(b)(1); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). For the following reasons, the Court accepts the R & R and denies and dismisses the Petition with prejudice, and denies the Motion for Evidentiary Hearing as moot.

**BACKGROUND**

The R & R sets forth a detailed factual and procedural background of this case, to which neither party objected. The Court therefore adopts this background as an accurate

recital, but will provide a brief summary here.

In January 2008, Petitioner was convicted in Coconino County Superior Court of sexual assault, sexual conduct with a minor, sexual exploitation of a minor, kidnapping, and obstructing a criminal investigation. These charges arose out of two incidents where Petitioner forced his fifteen-year-old stepdaughter to engage in sexual conduct with him. Petitioner was sentenced to 256 years in prison. His conviction was affirmed on direct appeal by the Arizona Court of Appeals. Petitioner then filed a petition for review in the Arizona Supreme Court, which was denied.

Petitioner then filed for post-conviction relief ("PCR") in Coconino County Superior Court. His appointed PCR counsel filed a notice of review and of no colorable claims, and was appointed to act as advisory counsel. The PCR petition was denied by the trial court and denied by the Arizona Court of Appeals; and again, the Arizona Supreme Court declined review.

Petitioner filed the instant Petition in this Court on May 13, 2015. He alleges six grounds for relief: (1) judicial bias as evidenced by the trial judge's failure to announce certain evidentiary rulings to the jury, (2) prosecutorial misconduct in alluding to the victim's chastity, (3) the admission of expert testimony that improperly vouched for the victim's credibility, (4) prosecutorial misconduct in insinuating that Petitioner had drugged the victim, (5) actions of the victim, her mother, and her friends in the gallery that improperly swayed the jury's sympathies, and (6) double jeopardy.

The magistrate judge submitted an R & R to this Court. The R & R recommends that Grounds 2, 3 and 5 be denied as procedurally defaulted, and that Grounds 1, 4 and 6 be denied as failing to demonstrate that the Arizona Court of Appeals' decision affirming Petitioner's conviction was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

## DISCUSSION

### I.     Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or

1  recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that
2  the district judge must review the magistrate judge's findings and recommendations de
3  novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d
4  1114, 1121 (9th Cir. 2003) (en banc). District courts are not required to conduct "any
5  review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474
6  U.S. 140, 149 (1985).

7  Under the Antiterrorism and Effective Death Penalty Act of 1996, the Court may
8  not grant habeas relief unless it concludes that the state's adjudication of the claim (1)
9  resulted in a decision that was contrary to, or involved an unreasonable application of,
10  clearly established federal law, as determined by the Supreme Court of the United States,
11  or (2) resulted in a decision that was based on an unreasonable determination of the facts
12  in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

13 **II.   Analysis**

14  **A.   Grounds 2, 3, 4, 5 and 6**

15  The magistrate judge found that Petitioner's Grounds 2, 3 and 5 were unexhausted
16  and procedurally barred. (Doc. 22 at 7–12.) Petitioner made no objection to this finding.
17  (Doc. 25 at 3.) This relieves the Court of its obligation to review this portion of the
18  R & R. Nevertheless, the Court has reviewed the magistrate judge's finding as to
19  Grounds 2, 3 and 5 and finds that it is well-taken. The Court therefore adopts the
20  magistrate judge's finding and recommendation as to Grounds 2, 3 and 5.

21  The magistrate judge found that Petitioner's Grounds 1, 4 and 6 were exhausted,
22  but that Petitioner failed to demonstrate an entitlement to habeas relief on these Grounds.
23  (Doc. 22 at 19–23.) As to these Grounds 4 and 6, the Objection states "Petitioner rests on
24  the argument of his argument." (Doc. 25 at 23.) Simply reasserting the grounds of the
25  Petition is not an effective objection necessitating de novo review. *See, e.g.*, *Bryant v.*
26  *Ryan*, No. CV-08-831-PHX-DGC (JJM), 2009 WL 1856603, at *1 (D. Ariz. June 29,
27  2009) ("Merely reasserting the grounds of the petition as an objection provides this Court
28  with no guidance as to what portions of the R & R Petitioner considers to be incorrect.");

*see also* Fed. R. Civ. P. 72(b)(2) (requiring "specific written objections to the proposed findings and recommendations").  This relieves the Court of its obligation to review this portion of the R & R.  Nevertheless, the Court has reviewed the magistrate judge's finding as to Grounds 4 and 6 and finds that it is well-taken.  The Court therefore adopts the magistrate judge's finding and recommendation as to Grounds 4 and 6.

### B.    Ground 1

To understand Petitioner's objections to the magistrate judge's findings on Ground 1, it is necessary to understand the precise argument Petitioner makes in Ground 1. Ground 1 is a claim of judicial bias on the part of the trial court judge who presided over Petitioner's trial.  Specifically, Petitioner argues that "[t]he trial court deliberately tipped the scales of justice in favor of the State of Arizona [by] fail[ing] to properly disclose bench conference decisions that favored the Defendant to the t[r]ier-of-fact."  (Doc. 1 at 11.)  Petitioner lists nine sidebar conferences; six occurring after a defense objection, and three after a State objection.  (*Id.* at 16.)  He argues that "the trial court established a distinct pattern" by failing to announce the judge's sustaining of defense objections and issuing no curative instructions, but announcing the sustaining of State objections and/or issuing curative instructions.  (*Id.*)  The problem, as Petitioner sees it, is that while the jury was instructed that "[i]f the Court sustained an objection to a lawyer's question, you must disregard it and any answer given," (Doc. 15-15 at 45, Ex. I [R.T. 01/17/08] at 44), the jurors would not know to disregard the answer that had been given if they did not know that the objection had been sustained.

Petitioner asserts that the trial judge's "conscious act" of failing to convey his rulings on these defense objections constituted "egregious violations of due process and fair trial" which could only be the product of incompetence or bias.  (Doc. 25 at 21–23.) Because of the trial judge's "numerous years" on the bench, Petitioner reasons, he could not be incompetent and must therefore be biased.  (*Id.* at 22–23.)

The bulk of Petitioner's objection, liberally construed, is that the magistrate judge dismissed Ground 1 on the basis that the jurors were instructed not to speculate on what

- 4 -

the answers to objected-to questions *might have been*, when the heart of Petitioner's Ground 1 argument addresses the answers that jurors *actually heard*. He makes several ancillary objections regarding the magistrate judge's reasoning and citations to the record.

### 1.    Preliminary matters

#### a.    Review of state court decisions

Petitioner's Objection, and indeed all of his filings, express frustration that the various courts reviewing his claims have allegedly misunderstood or simply failed to address his judicial bias argument. The magistrate judge noted that the "absence of explicit rulings" on Petitioner's judicial bias claims in PCR proceedings may have been due to waiver under Arizona Rule of Criminal Procedure 32.2(a)(3). (Doc. 22 at 15.) The state courts did not, however, make an explicit finding of waiver. (*Id.*) Thus, as the magistrate judge explained, this Court may still address the merits of Petitioner's claim under the rule of *Harris v. Reed*, 489 U.S. 255, 261–62 (1989).

Petitioner argues that it makes no sense to find that the state court decisions upholding his convictions against claims of judicial bias were not contrary to clearly established federal law when those decisions did not explicitly discuss the merits of the judicial bias argument. (Doc. 25 at 17–18.) But "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* at 100. Therefore, it is proper to consider whether the Arizona Court of Appeals decision denying Petitioner relief on his judicial bias claim was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented." 28. U.S.C. § 2254(d).

/ / /

### b.     The magistrate judge's citations to the record

Petitioner also asserts that several of the magistrate judge's record citations point to irrelevant portions of the record and therefore do not support the magistrate judge's decision.   This assertion appears to be based on some unfortunate confusion on Petitioner's part, rather than any error on the part of the magistrate judge.   The paper copy of the record filed by the State is separated into Exhibits, A through U, with each Exhibit paginated beginning at 1.   The electronic docket further separates some of the Exhibits into multiple PDF files, which are each individually paginated beginning at 1. For example, Exhibit H comprises electronic Documents 15-12, 15-13, and 15-14.   Page 1 of Document 15-14 is page 210 of Exhibit H.   On the occasions Petitioner argues that the magistrate judge's record citations do not support the magistrate judge's assertions, this appears to be because the magistrate judge used the electronic PDF page numbers, while the Petitioner thought these were the paper copy Exhibit page numbers.   All of the magistrate judge's record citations do, in fact, support the assertion for which they are cited.   To the extent that Petitioner did not raise further arguments about the citations he could not find,[1] the Court will nevertheless discuss each in full in its de novo analysis. For sake of clarity, parallel citations using each format will be used when referencing this record, along with the accompanying trial date.

### 2.     The merits of the judicial bias argument

### a.     Case law

Moving to the merits of the judicial bias claim, as an initial matter, Petitioner cites no cases where a judge's failure to announce evidentiary rulings made at sidebar has been held to be either error in its own right or evidence of judicial bias.   The Court has likewise found none.   This is not surprising.   "[J]udicial rulings alone almost never constitute a valid basis" for finding bias or partiality.   *Liteky v. United States*, 510 U.S. 540, 555 (1994).   Thus, had the trial judge here simply *overruled* the defense objections,

---

[1] That being said, the majority of the citations Petitioner misinterpreted were to the very same portions of the record Petitioner cited as the basis for his Petition and discussed elsewhere in his Objection.

a claim of bias would be difficult if not impossible to make.  In such a factual context, it would not be logical to say that an unfavorable ruling cannot serve for a basis for a finding of bias while a favorable ruling can.

This is especially so given the high bar for demonstrating judicial bias.  There is a "presumption of honesty and integrity" accorded to adjudicators.  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Overcoming this presumption on federal habeas review of a state court decision is particularly difficult.  A *federal* court on *direct review* will only lose this presumption when the judge demonstrates "an 'extremely high level of interference' by the trial judge which creates 'a pervasive climate of partiality and unfairness.'"  *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (quoting *United States v. DeLuca*, 692 F.3d 1277, 1282 (9th Cir. 1982)).  But even that stringent showing falls short of demonstrating the required Due Process violation to justify habeas relief from a state court judgment. *Id.*  Various Ninth Circuit cases illustrate just how high this bar is.  *See, e.g.*, *id.* at 740–41 (no Due Process violation where trial court judge "expressed clear frustration and hostility" toward one defense witness and, during examination of another, "told the prosecution to 'once in a while throw in an objection for the heck of it'"); *United States v. Martin*, 278 F.3d 988, 996–97 (9th Cir. 2002) (no Due Process violation where trial judge at sentencing called defendant's testimony a "crock of baloney"); *United States v. Wilkerson*, 208 F.3d 794, 798–99 (9th Cir. 2000) (no Due Process violation where trial judge suggested the prosecution add a charge against defendant and commented that the community was "tired" of the charged crime).

Petitioner's argument falls  short of demonstrating any kind of judicial bias, let alone bias that goes beyond even a "pervasive climate of partiality and unfairness" to rise to the level of a Due Process violation.  This becomes abundantly clear through a close review of the sidebars Petitioner cites as evincing judicial bias.

### b.      The sidebars

The first of the nine sidebars came on direct examination during the State's case-in-chief.  The witness was testifying about a text message conversation with the victim,

- 7 -

and the State sought to bring out testimony about the "tone" in the victim's text messages.  (Doc. 15-6 at 29, Ex. E [R.T. 01/10/08] at 28.)  The exchange leading to the sidebar was as follows:

> Q: You said you had two separate conversations, first if we can talk about the tone of the first conversation.
>
> A: The one where it was the "good night" talk.
>
> Q: That is the last one and let's talk about the middle of the night now?
>
> A: The middle of the night.
> [Defense counsel]: Can I be heard at sidebar?

(Doc. 15-6 at 29, Ex. E [R.T. 01/10/08] at 28.)   At sidebar, defense counsel raised objections on hearsay and foundation grounds, as he had done prior to the sidebar and continued to do subsequent to it.  (Doc. 15-6 at 29–31, Ex. E [R.T. 01/10/08] at 28–30.)  The objection was sustained on foundation, but the judge did note that the evidence might be admissible once proper foundation were laid.  (Doc. 15-6 at 31, Ex. E [R.T. 01/10/08] at 30.)  This ruling was not announced to the jury, but there was no need to announce it.  No testimony had been elicited prior to the request for sidebar; there was nothing for the jury to disregard.

The second sidebar came soon after, during the same section of testimony:

> Q: From your conversation with [the victim] during this 4:00 hour, can you describe your impression of the tone of the conversation?
>
> A: The tone that came off to me was a sense of being scared.
> [Defense counsel]: Same objection as to hearsay. Your honor, can I approach again?

(Doc. 15-6 at 33–34, Ex. E [R.T. 01/10/08] at 32–33.)  Again, the trial judge sustained defense counsel's objection on foundation, while noting that the evidence might be admissible if proper foundation were laid.  (Doc. 15-6 at 36–37, Ex. E [R.T. 01/10/08] at

35–36.)  Subsequently, the State laid additional foundation and elicited testimony as to

the tone of the text message conversation:

> Q: Did she seem to—the tone of those various [prior]
> conversations is what I am looking for, was that tone
> consistent what your description of her personality, bright,
> funny, happy? Or was it different or varying?
> [Defense counsel]: Same objection, foundation.
>
> The Court: Overruled.
>
> The Witness: As we were first going out up until the 11th
> there was no problems, we got along and she was just like
> you said, mostly happy for the most part.
>
> [. . .]
>
> Q: Just let me ask this general question.  The conversation
> that you had with her by text message, after midnight on
> October 12th, was that a different type of tone from previous
> conversations?
>
> A: Very much so.
>
> Q: What did that conversation make you feel like or make
> you want to do?
>
> A: It made me very nervous, very frustrated.
>
> Q: What did you want to do?
>
> A: I knew that she was alarmed by something . . . .

(Doc. 15-6 at 41–42, Ex. E [R.T. 01/10/08] at 40–41.)  Thus there was no harm in failing

to instruct the jury to disregard testimony as to a "scared" tone, since similar testimony

was soon admitted.

   The third sidebar occurred the following day, when the State elicited on direct

examination of a police detective that Petitioner had been interviewed by the police

twice.  (Doc. 15-8 at 104, Ex. F [R.T. 01/11/08] at 103.)  Defense counsel objected and

asked for a sidebar.  (Doc. 15-8 at 105, Ex. F [R.T. 01/11/08] at 104.)  At sidebar, the

trial judge sustained the objection and offered to give a curative instruction, but defense

counsel agreed that this might do more harm than good:

> The Court: . . . [I]f you want to form some form of curative
> instruction that is fine, I can certainly do one.  But the only
> problem is, again the curative instruction it brings attention to
> the ringing of a bell that should not have been rung, so I will

1      allow, if you want to have a curative instruction, no problem.

2      . . .

3      [Defense counsel]:  Your Honor, I should put on there I agree,
       once the bell is rung, it makes it worse . . . .
4

5  (Doc. 15-8 at 106–07, Ex. F [R.T. 01/11/08] at 105–06.)   Thus this sidebar, far from

6  indicating bias, shows the trial judge's deference to defense counsel concerning how he

7  wished to proceed to avoid prejudice to his client.  Petitioner certainly cannot complain

8  of the judge's failure to give a curative instruction when that failure was at the reasonable

9  behest of defense counsel.

10      The fourth sidebar occurred during the State's direct examination of a witness who

11 conducted a medical examination of the victim.  It was triggered by this exchange:

12      Q: If a person has never had sexual relationships before, they
       have a sexual relationship, is there something physical that
13     changes as a result of their first sexual experience?

14     A: Not necessarily.

15     Q: Do you have any analogy of statistics and research on that
       subject?
16
       A: There is a growing body of medical literature that
17     references the number of abnormal exams, meaning genital
       injury, after abuse or after vaginal penetration.
18     [Defense counsel]: I will object and ask to approach sidebar.

19 (Doc 15-11 at 27, Ex. G [R.T. 01/15/08] at 26.)   The sidebar that followed demonstrates

20 that defense counsel's objection was not directed at the content of the witness's answer

21 but rather where he believed the course of questioning was improperly heading:

22     [Defense counsel]: Any objection is that any evidence of
       *actual numbers*, *percentages* of examinations that are normal
23     or abnormal following sexual encounter, *actual numerically
       stating that* violates what I believe is set forth by our Supreme
24     Court . . . .

25     [. . .]

26     The Court: How . . . is he prejudiced by giving out this
       information because the question is, can you have a normal
27     genital examination after having sex?

28     [Defense counsel]: *That is not objectionable, that particular
       question*.  What is objectionable is, have you read about

- 10 -

> *particular* statistics. . . . I don't believe he can go into *exact numbers*.

(Doc. 15-11 at 27–28, Ex. G [R.T. 01/15/08] at 26–27 (emphasis added).)  The sidebar ended with the judge cautioning the prosecutor not to delve any further into statistics, but there was no ruling that the testimony that had thus far been elicited was improper, and thus no need to instruct the jury to disregard it.

The fifth sidebar followed almost immediately.  In continuing to question the witness, the prosecutor again used the phrase "first sexual encounter," to which defense counsel objected, and the judge called for a sidebar.  (Doc. 15-11 at 31, Ex. G [R.T. 01/15/08] at 30.)  The sidebar discussion concerned the judge's prior ruling that the victim's virginity was not to be raised.

> [The State]: I was speaking not [sic] in general terms, I am trying to establish if you look, and you see an injury, does that tell you sex or no sex.  I can back off of that.  [The issue of virginity] is not where I was intending to go.
>
> The Court: Then back off of first sexual experience, I think your first question regarding injury to the hymen was appropriate.  I think the following of it, "first sexual experience" so on and so forth, I think you are close to that issue of my ruling, and so I am going to sustain the objection.  If you will just confine it to generalities, I think you will probably be safer on this. Okay?

(Doc. 15-11 at 32, Ex. G [R.T. 01/15/08] at 31.)  As before, the problem was not with any testimony elicited from a witness but rather with the prosecutor's question, from which the jury might have inferred facts about the victim's virginity.  But the jury had been instructed at the beginning of trial that statements, arguments and questions made by the lawyers were not evidence.  (Doc. 15-4 at 26–27, Ex. D [R.T. 01/09/08] at 150–51.)  The jury was again so instructed at the end of the trial.  (Doc. 15-15 at 44–45, Ex. I [R.T. 01/17/08] at 43–44.)  Juries are presumed to follow instructions they are given.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Whether an additional curative instruction at the end of this sidebar would have beneficially augmented the preliminary and final jury instructions, or instead would simply have re-rung a bell that should not have been

rung in the first place, is a matter over which reasonable people could disagree.  That the trial judge reasonably declined to give an additional curative instruction is not indicative of judicial bias.

The sixth and final sidebar on a defense objection came during the State's cross-examination of Petitioner.  Unlike the previous five sidebars, here the objection was made *before* the witness had a chance to answer the objected-to question.  There was thus no improperly elicited evidence for the jury to disregard, and no need for a curative instruction.  (Doc. 15-13 at 81–85, Ex. H [R.T. 01/16/08] at 200–04.)  As Petitioner acknowledges, the jury was instructed not to speculate on the answers to any questions which were objected to.  (Doc. 15-4 at 26–27, Ex. D [R.T. 01/09/08] at 150–51; Doc. 15-15 at 45, Ex. I [R.T. 01/17/08] at 44.)

Thus, with respect to the six sidebars that came as a result of defense objections, there was only one where any ultimately inadmissible witness testimony had been elicited.  And that sidebar concluded with defense counsel asking the judge *not* to issue a curative instruction.

By contrast, of the three sidebars Petitioner cites that arose from a State objection where the judge did announce his ruling, the first involved the admission of an exhibit.  (Doc. 15-12 at 100–02, Ex. H [R.T. 01/16/08] at 99–101.)  The second and third sidebars came in the same line of questioning as each other.  The latter of these involved an extremely prejudicial answer given by the Petitioner as witness, where he stated that the victim had done something "illegal."  (Doc. 15-13 at 32, Ex. H [R.T. 01/16/08] at 151.)  Immediately prior to that, there was a brief sidebar over a line of questioning defense counsel had begun, which the prosecutor apparently foresaw as leading to impermissible testimony regarding bad acts.  (Doc. 15-13 at 31, Ex. H [R.T. 01/16/08] at 150.)  At the end of this sidebar, the judge announced that he had sustained the State's objection.  This did not benefit the State to the detriment of the Petitioner.[2]

---

[2] The magistrate judge also noted that "in at least one instance the State asked to approach the bench, counsel argued an evidentiary issue, and the judge made no announcement regarding the resolution of that issue once the sidebar ended." (Doc. 22 at

1   Thus, the magistrate judge was correct in concluding that any concerns arising out

2   of the sidebar conferences Petitioner cites were properly addressed by jury instructions,

3   and Petitioner's objection on this point is overruled.

4   Petitioner does make an ancillary objection to this point which must be addressed.

5   He argues that the R & R is "trying to claim both sides of the same coin" on the

6   speculation issue.  Petitioner contends that the magistrate judge's finding that the jury

7   was effectively instructed not to speculate on matters not on evidence, on one hand, is

8   inconsistent with the magistrate judge's noting that the jury could "infer" from

9   subsequent questioning whether an unannounced ruling was sustained or overruled.

10  (Doc. 25 at 4–5.)  But this is not inconsistent.  Inferring what an evidentiary ruling was

11  from subsequent questioning does not lead to the consideration of facts not in the record;

12  speculation about matters not in evidence, by definition, does.  Petitioner's objection on

13  this point is overruled.

14  ### c.   The trial record as a whole

15  More broadly, the trial record as a whole does not support Petitioner's claim of

16  judicial bias.  The record reflects numerous occasions where the judge, in his discretion,

17  made decisions favorable to Petitioner.  Prior to the start of trial, when Petitioner was

18  representing himself, Petitioner requested that his investigator be allowed (at the expense

19  of the County Legal Defender's Office) to accompany him during the entire trial.  (Doc.

20  15-2 at 8–12, Ex. C [R.T. 01/08/08] at 7–11.)  Although the Legal Defender's Office

21  expressed unease at the "highly unusual" request, the judge granted it, acknowledging the

22  importance of putting Petitioner on as fair a footing as possible:

23   In this case Mr. Pizzi has been involved extensively with I
     think almost every aspect of Mr. Follansbee's defense, much
24   like the Flagstaff Police Department has been involved with
     the State's investigation, so the county will just have to
25   recognize it in this case and the county will have to—I think

26  

27  18.)  Petitioner finds the citation "perplexing and difficult to comprehend," (Doc. 25 at
    18–19), likely because of the confusion discussed earlier.  The instance the magistrate
28  cites occurred during the defense's closing argument.  (Doc. 15-16 at 12–14, Ex. I [R.T.
    01/17/08] at 108–10.)  It further supports the finding that there was no unfair difference
    in the trial judge's treatment of the parties.

- 13 -

the county has an obligation to make sure, under these circumstances, sufficient funds are available for this, so I will authorize six days. If you need more, believe me, if you need more than that, you can bring that up at that time.

(Doc. 15-2 at 12, Ex. C [R.T. 01/08/08] at 11.)

The trial judge cautioned the prosecutor at the close of the State's opening against any improper vouching and offered to give a curative instruction:

The Court: Listen Ted, when you were doing your opening statement I heard you use the phrase, "You will see that certain evidence is entirely consistent with [the victim's] statement," there wasn't an objection by Brad, but I want to caution you from engaging in any kind of vouching for the credibility of your witness, or the direct of the evidence that you believe—I don't know if [defense counsel wants] any kind of instruction or you—

[Defense counsel]: I will let it go for now. Your Honor, obviously I didn't hear what you—I typically always object to vouching and I thought you said the evidence would be consistent with her statements, other than her statements were—I believe her statements are true, but I appreciate the Court's concern.

(Doc. 15-4 at 66, Ex. D [R.T. 01/09/08] at 190.)

The trial judge again called a sidebar and cautioned the prosecutor when he grew concerned that the prosecutor's direct examination of a police detective was approaching impermissible topics:

The Court: I'm a little concerned with some of his answers, they are getting too close to the fact that he is in custody, and received from the jail property room, his answer on that, and so you really need to run a tight questioning on him, on this, okay, Ted? And make sure he doesn't go any further with this.

[Defense counsel]: I appreciate that, I certainly don't want to overemphasize the fact that he was in custody or I certainly don't want that to, in any ways, know he was in custody all this time.

(Doc. 15-7 at 97–98, Ex. E [R.T. 01/10/08] at 217–18.)

There is no reasonable basis to find that the trial judge harbored any bias against

Petitioner.  The Arizona Court of Appeals decision affirming Petitioner's conviction was therefore not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

## CONCLUSION

Petitioner's objections to the R & R are overruled, and the R & R is adopted in full.

**IT IS ORDERED:**

1.      Magistrate Judge Fine's R & R, (Doc. 22), is **ACCEPTED**.

2.      Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (Doc. 1), is **DENIED** and **DISMISSED WITH PREJUDICE**.

3.      Petitioner's Motion for Evidentiary Hearing, (Doc. 21), is **DENIED AS MOOT**.

4.      The Clerk of Court shall terminate this action and enter judgment accordingly.

5.      Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's procedural ruling debatable.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated this 22nd day of March, 2017.

_____
Honorable G. Murray Snow
United States District Judge